IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HAZEL JONES-HUFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14-cv-09577 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| COURTNEY HILL, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This lawsuit grew out of a long-standing feud between neighboring couples: Plaintiff Hazel Jones-Huff and her now-deceased husband, Joseph Huff, in one house, and Defendant Courtney Hill, an officer in the Chicago Police Department, and his wife, Cathy Hill, in the house next door. One day the Hills placed a flower pot on or near the fence separating the two couples' houses. Jones-Huff did not like where they put it, so she and Cathy Hill began to argue. This was not their first argument. But this time the argument escalated into dramatic violence, with Huff and Defendant Hill ultimately exchanging gunfire. After Huff shot and maimed Cathy Hill, Defendant Hill returned fire, first killing Huff and then shooting at Jones-Huff. In this lawsuit, Jones-Huff claims that the shots Defendant Hill fired at her constituted excessive force in violation of her rights under the Fourth Amendment. She additionally argues that after shooting her, Defendant Hill took actions resulting in her false arrest and malicious prosecution in violation of state law. Defendant Hill has moved for summary judgment on all of Jones-Huff's claims.[1] The Court denies that motion for the reasons that follow.

---

[1] Jones-Huff's three-count amended complaint, filed on September 11, 2016, asserts only an excessive force claim under 42 U.S.C. § 1983 and state law claims for false arrest and malicious prosecution. (Am. Compl., Dkt. No. 122.) Jones-Huff's original complaint also included a § 1983 conspiracy claim as well as state law claims for battery and intentional infliction of emotional distress. (Compl., Dkt. No. 1.) Those

# BACKGROUND[2]

## I. The Shootings

At the time the events giving rise to this lawsuit occurred, Defendant Hill was 46 years old, a 19-year veteran of the Chicago Police Department, and married to Cathy Hill. (Def.'s Resp. Pl.'s Stmt. Add'l Undisputed Facts ("DRPAUF") ¶ 56, Dkt. No. 84; Pl.'s Resp. Def.'s Stmt. Undisputed Facts ("PRDSUF") ¶ 4, Dkt. No. 87.) Jones-Huff was 91 years old and her husband was 86 years old. (PRDSUF ¶ 1; DRPAUF ¶¶ 1, 12.) The Hills and the Huffs had known each other for at least a dozen years. (PRDSUF ¶ 7.) The Hills had lived at 8417 South Carpenter Street in Chicago since at least 1999. (PRDSUF ¶ 4.) Jones-Huff lived at a neighboring lot, numbered 8411 South Carpenter Street, with her husband. (DRPAUF ¶ 1.) Each

---

claims were abandoned by Jones-Huff with the amendment to the complaint. (Min. Entry, Dkt. No. 120.) In addition, Jones-Huff initially sought relief against other officers for the same causes of action that he now asserts only against Defendant Hill and asserted two counts against the City of Chicago under Illinois state law. But she then voluntarily dismissed "all defendants except Courtney Hill from the lawsuit." (Pl.'s Mot. to Dismiss Certain Defs., Dkt. No. 62; Min. Entry, Dkt. No. 64 (granting Pl.'s Mot. to Dismiss Certain Defs.).) This opinion addresses the three surviving claims against Defendant Hill.

[2] Unless otherwise noted, the following facts are undisputed for present purposes. On a motion for summary judgment, the Court must draw "all reasonable inferences from undisputed facts in favor of the nonmoving party." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (internal citation omitted). The facts are gleaned from the parties' submissions under Local Rule 56.1 (N.D. Ill.). Local Rule 56.1 "is designed, in part, to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (internal citation and quotation marks omitted). Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." *Petty v. City of Chicago,* 754 F.3d 416, 420 (7th Cir. 2014) (quoting N.D. Ill. L.R. 56.1(a)(3)). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (internal citation and quotation marks omitted); *see also* N.D. Ill. L.R. 56.1(b)(3)(A). Finally, Local Rule 56.1(b)(3)(C) "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate statement . . . of any additional facts that require the denial of summary judgment." *Sojka v. Bovis Lend Lease, Inc.,* 686 F.3d 394, 398 (7th Cir. 2012) (internal citation and quotation marks omitted). In this case, neither party fully abided by these requirements. Jones-Huff's response numbered the responses by paragraph but did not include the initial statements. Defendant Hill filed an unauthorized reply. The Court declines to sanction either party for this noncompliance but admonishes the attorneys of record to comply with the Federal Rules of Civil Procedure and this Court's local rules in future.

house had a yard in back. (*Id.* ¶¶ 1, 3.) Between the two yards ran two fences. (DRPAUF ¶ 10.) One was a wrought iron fence; the other was a six-foot "cyclone fence with white privacy slats." (PRDSUF ¶ 16; DRPAUF ¶¶ 8, 10.)

On April 25, 2014, Cathy Hill was in her back yard. (PRDSUF ¶¶ 1, 3.) Jones-Huff was in her own back yard, on her side of the fences. (*Id.* ¶ 1.) The Hills had placed a flower pot on the Huffs' fence. (*Id.* ¶ 2.) The parties agree that Jones-Huff pushed the pot, although they dispute whether she pushed it with a stick or with a broom and also whether she knocked it to the ground altogether. (*Id.*) According to Jones-Huff, she "used a stick to move the pot off her fence," and although she did not knock it to the ground, "Cathy Hill[] began running toward the fence screaming and yelling obscenities," (*id.* ¶ 3), and then "pour[ed] dirt over the fence onto [ ] Jones-Huff's head." (DRPAUF ¶ 4.) Defendant Hill tells a different story. He claims that Jones-Huff used a broom to cause the flower pot "to fall" to the ground, where it broke, such that Cathy Hill "heard the crash of the flower pot" hitting the ground. (Def.'s Stmt. Undisputed Facts ¶ 3, Dkt. No. 69.) He further claims that after Cathy Hill and Jones-Huff began to argue, Jones-Huff swung a broom "over the fence and hit Cathy Hill on her head" and then did the same to Defendant Hill (*Id.* ¶¶ 8-9.) These disputes turn out to be of greater moment than one might expect at first blush.

Although the parties disagree about whether Jones-Huff broke the flower pot and hit the Hills, they agree that the two women argued loudly. (DRPAUF ¶ 3; PRDSUF ¶ 5.) At some point, Cathy Hill referred to Jones-Huff as a "bitch." (DRPAUF ¶ 5.) The sounds of the argument reached Defendant Hill, who was in front of his house. (PRDSUF ¶ 5.) At the time, he was off duty and in civilian clothes "but did have his duty weapon on his person." (*Id.* ¶ 6.) Defendant Hill walked to his back yard upon hearing his wife and Jones-Huff arguing. (*Id.*) The

3

parties dispute what he saw. Although Jones-Huff denies having hit Cathy Hill with a broom, Defendant Hill claims that he saw her do so. (*Id.* ¶ 8.) Whether or not Defendant Hill saw Jones-Huff hit his wife, he did dial 911, apparently in response to whatever was going on between the two women. (*Id.* ¶ 11.)

At some point, Huff also arrived at the scene. The parties agree that Defendant Hill was talking to the 911 operator using an earpiece and facing away from the Huffs' property when Cathy Hill saw Huff exit his house into his back yard armed with a shotgun. (*Id.* ¶¶ 15-16.) Cathy Hill yelled to her husband, "he's got a shot gun." (*Id.* ¶ 15.) Defendant Hill then turned to face Huff, who shot across the fence toward the Hills' back yard. (*Id.* ¶ 16.) Huff's shots struck Cathy Hill, who was then "lying on the ground[,] screaming out in pain[,] profusely bleeding." (*Id.* ¶¶ 17, 20.) Her injuries ultimately resulted in the loss of her right eye and the amputation of her right arm at the elbow. (*Id.* ¶ 17.) After Huff shot his wife, Defendant Hill drew his duty weapon and returned fire. (*Id.* ¶ 18.) He struck and killed Huff, whose shotgun fell to his feet. (*Id.* ¶¶ 18-19.) Defendant Hill kept his gun drawn and pointed at Jones-Huff. (*Id.* ¶ 19.) During the exchange of gunfire, he had remained on the phone with the 911 operator, to whom at some point he reported that shots had been fired. (*Id.* ¶ 22.)

The parties dispute what Jones-Huff did after Defendant Hill shot her husband. Defendant Hill claims that Jones-Huff walked over to Huff's body and then bent down and touched it. (*Id.*) He further claims that he did not know whether Huff's shotgun remained loaded, so he not only instructed Jones-Huff to back away from the gun but also warned her that, if she did not do so, he would shoot her. (*Id.* ¶¶ 19, 22.) Instead of following his instructions, however, Jones-Huff grabbed the barrel of the shotgun "and moved it about an inch closer to her." (*Id.* ¶ 23.) Defendant Hill also claims that Jones-Huff "reached . . . a second time and touched the

barrel of her husband's gun, even though [he] order[ed] her to get away from the gun or he would shoot her." (*Id.* ¶ 26.) Jones-Huff tells a different story. She says that she begged Defendant Hill to let her comfort Huff but "she never got close enough to her husband to even talk to" him. (*Id.* ¶ 19.)

It is undisputed that, at some point after shooting Huff, Defendant Hill shot at Jones-Huff twice. (*Id.* ¶¶ 24, 27.) The parties do dispute, however, how far Defendant Hill was from Huff's shotgun and whether he could have reached it at the time he shot Jones-Huff. They also dispute whether Jones-Huff was bent down or standing next to Huff's body (and the shotgun at his feet) when Defendant Hill shot her. After Jones-Huff was shot, she walked up the stairs from her back yard into her house. (*Id.* ¶ 33.)

## II. The Aftermath of the Shootings

At some point during his 911 call, Defendant Hill reported to the dispatcher that "2 people are shot." (DRPAUF ¶¶ 28-29.) After the shootings, other police officers eventually arrived at the scene. (*Id.* ¶ 33.) Defendant Hill remembers about half a dozen officers responding, but he did not know any of them. (PRDSUF ¶ 39.)

Later that day, Defendant Hill signed a criminal complaint against Jones-Huff for battery and unlawful aggravated assault of a peace officer. (Pl.'s Stmt. Add'l Undisputed Facts ¶ 41, Dkt. No. 72.) Specifically, his complaint stated that Jones-Huff knowingly and intentionally threatened him while she was in control of a shotgun. (PRDSUF ¶ 41.) Although Jones-Huff does not dispute that, after April 25, 2014, Defendant Hill never met with his superiors in the police department to explain what had happened, she claims that "Lieutenant Margaret Sears believed Plaintiff had 'brandished a gun' and she approved the charges against Plaintiff based on

5

the Narrative of the arrest report that Plaintiff was in control of a gun." (*Id.* ¶ 43; DRPAUF ¶ 64.) Jones-Huff was ultimately tried in state court by a judge and found not guilty. (DRPAUF ¶ 51.)

Following her acquittal, Jones-Huff brought this civil lawsuit. The amended complaint asserts a federal claim against Defendant Hill pursuant to 42 U.S.C. § 1983 for use of excessive force, as well as state law claims against him for false arrest and malicious prosecution. Defendant Hill has moved for summary judgment on each of these claims.

## STANDARD OF REVIEW

When considering a motion for summary judgment, the Court construes all facts and reasonable inferences in the light most favorable to the nonmoving party. *See Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). But "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (internal citation and quotation marks omitted). The "mere existence of *some* alleged factual dispute" does not suffice to defeat a motion for summary judgment. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (internal citation and quotation marks omitted) (emphasis in original). Rather, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the applicable substantive law." *Lawrence v. Kenosha Cty.,* 391 F.3d 837, 842 (7th Cir. 2004) (internal citation and quotation marks omitted). The genuineness of a dispute suffices to defeat a motion for summary judgment only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal citation and quotation marks omitted).

# DISCUSSION

Defendant Hill has moved for summary judgment on all of Jones-Huff's three remaining claims. Jones-Huff's claim that Defendant Hill used unconstitutionally excessive force turns on his shooting of her. The other two claims—false arrest and malicious prosecution—turn on events subsequent to the shooting.

## I. Federal Law Excessive Force Claim

Jones-Huff's excessive force claim is based on Defendant Hill's alleged violation of her constitutional right to be free from unreasonable searches and seizures. *See* U.S. Const. Am. IV; 42 U.S.C. § 1983 (providing a remedy for deprivation of a plaintiff's civil rights by a person acting under color of state law). "A police officer's use of deadly force is a seizure" for these purposes. *Muhammed v. City of Chicago*, 316 F.3d 680, 683 (7th Cir. 2002) (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). Accordingly, Jones-Huff alleges that Defendant Hill deprived her of her Fourth Amendment right by using excessive force when he shot her.

### A. Under Color of State Law

As a preliminary matter, Jones-Huff has a cause of action under § 1983 only if Defendant Hill acted under color of state law. An officer "who is off duty . . . acts under color of state law when [and only when] (1) [he] purport[s] to or pretend[s] to act under color of law, (2) his pretense of acting in the performance of his duties . . . had the purpose and effect of influencing the behavior of others, and (3) the harm inflicted on [the] plaintiff related in some meaningful way either to the officer's governmental status or to the performance of his duties[.]" *Naffe v. Frey*, 789 F.3d 1030, 1037 (9th Cir. 2015) (internal citations and quotation marks omitted). The Court need not and does not determine here whether Defendant Hill was acting under color of law during the shootings because he has not disputed that conclusion. In his answer to Jones-

Huff's amended complaint, Defendant Hill admits that he "was acting under the color of law . . . at all times." (Ans. ¶ 20, Dkt. No. 123.) And he has not disputed the issue in connection with his motion for summary judgment. (*See* DRPAUF ¶ 65.)

**B.     Reasonableness**

The Court must review Jones-Huff's excessive force claim under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor,* 490 U.S. 386, 395 (1989). The Court evaluates an officer's use of force from the perspective of a reasonable officer, not the subjective perspective of the officer on the scene whose actions are in question. But the reasonable officer whose perspective the Court must adopt is one operating under the same circumstances as the officer on the scene, not one who enjoys the benefits of hindsight that time for contemplation and a full record allow. *Graham*, 490 U.S. at 396; *see also Maravilla v. United States*, 60 F.3d 1230, 1233 (7th Cir. 1995) (observing that the Fourth Amendment standard is an objective one) (citing *Graham*, 490 U.S. at 397).

To determine whether an officer's actions under the circumstances were reasonable, the Court must consider several factors, including whether the individual against whom the officer took action posed an immediate threat, was armed, or was attempting to interfere with the officer's duties. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (citing *Padula v. Leimbach,* 656 F.3d 595, 602 (7th Cir. 2011)). The Court examines these factors to determine "whether the force used to seize the suspect was excessive in relation to the danger" that the seized individual posed otherwise. *Padula*, 656 F.3d at 602. The Seventh Circuit has admonished district courts considering whether a particular use of force is unconstitutional, to "consider the facts and circumstances of each particular case," rather than some generalized or archetypical version of that kind of use of force. *Weinmann v. McClone*, 787 F.3d 444, 448 (7th Cir. 2015)

(internal citation and quotation marks omitted). "Finally, if there are sufficient undisputed material facts to establish that the officer acted reasonably under the circumstances, then the court must resolve the issue as a matter of law, rather than allow a jury to 'second-guess' the officer's actions." *Dawson*, 803 F.3d at 833 (quoting *Bell v. Irwin,* 321 F.3d 637, 640 (7th Cir. 2003)).

An officer's use of deadly force requires a special reasonableness inquiry. The Supreme Court has "stressed . . . that it is reasonable to use deadly force if the officer . . . has probable cause to believe that the suspect poses a threat of death or serious physical harm to the officer or others and, whenever possible, warns the suspect before firing." *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988) (citing *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985)). A suspect's threat with a weapon provides such probable cause. *See id.* "'It is not necessary that the danger which gave rise to the belief actually existed; it is sufficient that the person resorting to self defense at the time involved reasonably believed in the existence of such a danger . . . .'" *Id.* at 806 (quoting *Davis v. Freels*, 583 F.2d 337, 341 (7th Cir. 1978)).

Jones-Huff suggest that, to the extent Defendant Hill reasonably thought she might use the shotgun to shoot him, he ought to have prevented her from doing so by a method other than shooting her—for instance, by grabbing the shotgun himself. But the Fourth Amendment does not require an officer in Defendant Hill's situation "to use all feasible alternatives to avoid a situation where deadly force can justifiably be used." *Plakas v. Drinski*, 19 F.3d 1143, 1148 (7th Cir. 1994). Indeed, the Seventh Circuit has cited with approval "cases which support the assertion that, where deadly force is otherwise justified under the Constitution, there is no constitutional duty to use non-deadly alternatives first." *Id.*

9

Moreover, an inquiry as to reasonableness under the Fourth Amendment almost always requires a fact-finder to resolve factual disputes. As a result, federal courts should be sparing in their grants of summary judgment in such cases. *See Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Cases such as this one turn on the relative credibility of the seizing and seized parties, which makes summary judgment inappropriate. *See, e.g.*, *Sherrod*, 856 F.2d at 806 (holding that the veracity of the officer's testimony and the reasonableness of his actions in dealing with a suspect who he believed to be armed and dangerous and to have made a quick movement with his hand going into his coat as if he were going to reach for a weapon were questions appropriately left for a properly informed and instructed jury).

According to Defendant Hill, Jones-Huff was close enough to the shotgun to give him probable cause to believe that she might harm him. Jones-Huff disputes that fact. Thus, the parties dispute a key fact material to the excessive-force claim: Jones-Huff's proximity to and behavior toward her husband's shotgun. If Jones-Huff reached for the gun, as Defendant Hill claims, a reasonable person knowing what he did at the time might fear serious injury to himself or his wife—to wit, another round from the shotgun. Jones-Huff and Defendant Hill offer contradictory testimony on whether Jones-Huff reached for the gun. If the jury believes Jones-Huff, it could conclude that she was not near enough to the shotgun when Defendant Hill shot her to pose a threat to him or his wife. These disputed facts are sufficient to preclude a grant of summary judgment on Jones-Huff's excessive force claim.

### C. Qualified Immunity

Before moving on from Jones-Huff's excessive force claim, however, the Court must consider Defendant Hill's argument that he is entitled to summary judgment based on a theory of qualified immunity. Police officials performing discretionary functions enjoy qualified immunity

from liability for civil damages when they "act in ways they reasonably believe to be lawful." *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008) (internal citation and quotation marks omitted). So "while the substantive constitutional standard protects officers' reasonable factual mistakes, qualified immunity protects them from liability where they reasonably misjudge the legal standard." *Catlin v. City of Wheaton*, 574 F.3d 361, 369 (7th Cir. 2009).

Defendant Hill argues that he is entitled to qualified immunity on Jones-Huff's excessive force claim. "Determination of whether qualified immunity applies depends on whether the violation of a constitutional right occurred and whether the unconstitutionality of an officer's conduct was clearly established in the law at the time of the alleged misconduct." *Coleman v. Wiencek*, No. 08 C 5275, 2010 WL 1506708, at *6 (N.D. Ill. Apr. 13, 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The issue here is not whether the claimed constitutional right was clearly established. To the contrary, "[t]t has been well established for years that the use of deadly force must be reasonable and that reasonableness is determined 'in light of the facts and circumstances confronting [the officer] at the moment [he] acted.'" *Coleman*, 2010 WL 1506708, at *6 (quoting *Maravilla*, 60 F.3d at 1233). Rather, the issue is whether Defendant Hill acted reasonably under the circumstances. *See id.* Where the parties dispute facts key to the determination of whether the officer acted reasonably, the Court cannot determine whether the officer enjoys immunity on a summary judgment motion. As described above, the parties dispute whether Jones-Huff reached for the shotgun before Defendant Hill shot her. A grant of summary judgment for reasons of qualified immunity would not be appropriate.

## II. State Law Claims

After she was shot, Jones-Huff was arrested based on Defendant Hill's complaint that she assaulted and battered him. A person commits aggravated assault in Illinois when she engages in

11

conduct that places an individual who the person knew to be a peace officer engaged in official duties in reasonable apprehension of receiving a battery. *See* 720 ILCS 5/12-1; 720 ILCS 5/12-2(a)(4)(i). Criminal battery in Illinois requires "physical contact of an insulting or provoking nature." 720 ILCS 5/12-3. Jones-Huff was charged with, prosecuted for, and found not guilty of criminal battery and aggravated assault. She now argues that Defendant Hill's actions caused her to be subjected to a false arrest and malicious prosecution.

### A. False Arrest

To succeed on a false arrest claim under Illinois state law, a plaintiff must demonstrate (1) that she was restrained or arrested by the defendant and (2) that the defendant acted without reasonable grounds to believe that the plaintiff committed an offense, *i.e.*, that the defendant lacked probable cause. *See Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222, 1231 (Ill. 1990); *Gvozden v. Mill Run Tours, Inc.*, Nos. 10-cv-4595, 10-cv-4606, 2016 WL 930514, at *2 (N.D. Ill. Mar. 11, 2016) ("[T]he probable cause analysis focuses on whether the defendant who is alleged to have procured the plaintiff's arrest had 'reasonable grounds to believe that an offense was committed by the plaintiff.'") (quoting *Johnson v. Target Stores, Inc.*, 791 N.E.2d 1206, 1220 (Ill. App. 2003)). Whether probable cause exists is a question of law unless the parties dispute the operative facts. *See Gaszak v. Zayre of Ill., Inc.*, 305 N.E.2d 704, 709 (Ill. App. Ct. 1973). It "depends upon the totality of the circumstances as viewed under practical considerations of everyday life from the point of view of reasonable men." *People v. Holmes*, 433 N.E.2d 1027, 1031 (Ill. App. Ct. 1982) (citing *People v. Green*, 410 N.E.2d 1003, 1006 (Ill. App. Ct. 1980)). Illinois courts "look at all the circumstances presented to the investigating officer" in order to "determin[e] whether there was probable cause" for that officer to effect an arrest. *Id.* "Facts sufficient to establish probable cause need not be sufficient to establish guilt

beyond a reasonable doubt, and probable cause may be founded upon evidence which would not be admissible at trial." *Id.* (citing *People v. Blitz* 369 N.E.2d 1238, 1240 (Ill. 1977)).

Defendant Hill does not dispute that he caused Jones-Huff's detention. Instead, he argues that Jones-Huff has not identified a genuine dispute of material fact regarding whether he had probable cause to effectuate her arrest. In particular, Defendant Hill argues that he had probable cause to believe that Jones-Huff committed two offenses. Defendant Hill first contends that he had probable cause to believe that Jones-Huff had committed battery against him and his wife by hitting each of them with a broom. But Jones-Huff denies hitting either Defendant Hill or Cathy Hill with a broom and raises a plausible challenge Defendant's Hill's credibility in claiming that he believed she had done so. Because the determination of probable cause for the battery charge turns on credibility determinations, it would be inappropriate to grant summary judgment on that ground.

The second crime that Defendant Hill says he had probable cause to believe Jones-Huff committed before her arrest is aggravated assault. As stated above, a person has committed aggravated assault in Illinois if she places in reasonable fear for his life an individual she knows to be a peace officer. Defendant Hill argues that Jones-Huff committed aggravated assault when, knowing that he was a peace officer, she refused to relinquish control over her husband's shotgun when ordered to do so. Specifically, Defendant Hill claims that Jones-Huff's position before he shot her put her "in control of the shotgun because it was in her immediate area allowing her the ability to pick it up," so that "it remained a threat." (Def.'s Stmt. Undisputed Facts ¶ 44, Dkt. No. 69.) Jones-Huff responds with reference to her deposition testimony that she was not close enough to her husband to talk to him. (PRDSUF ¶ 44.)

Defendant Hill's argument for probable cause turns on key disputed facts: Jones-Huff hit him and his wife with a broom and then, after her husband shot Cathy Hill with a shotgun and Defendant Hill returned fire, Jones-Huff grabbed the shotgun before Defendant Hill shot her. The facts to which Defendant Hill cites, if true, would likely constitute probable cause for the charges on which Jones-Huff was arrested. But Jones-Huff heartily disputes those alleged facts—she admits that she was somewhere in the vicinity of Huff's shotgun but nothing more. Whether to believe Defendant Hill or Jones-Huff, and moreover, whether Jones-Huff's mere position close to the shotgun could put Defendant Hill "in reasonable apprehension of receiving a battery" as the aggravated assault statute requires, are factual questions inappropriate for resolution on summary judgment.

B.    **Malicious Prosecution**

The elements of a malicious prosecution claim under Illinois law include:

> (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages.

*Szczesniak v. CJC Auto Parts, Inc.*, 21 N.E.3d 486, 490 (Ill. App. Ct. 2014), *appeal denied*, 23 N.E.3d 1207 (Ill. 2015) (internal citation omitted).[3] The "commence[ment] or continu[ation of] a criminal proceeding" is attributed to a defendant if he either "initiated the criminal proceeding or 'his participation in it must have been of so active and positive a character as to amount to advice and cooperation.'" *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) (quoting *Denton v. Allstate Ins. Co.*, 504 N.E.2d 756, 760 (Ill. App. Ct. 1987)). "Even where the private citizen

---

[3] The first requirement is sometimes articulated as two separate elements. *See, e.g.*, *Freides v. Sani-Mode Mfg. Co.*, 211 N.E.2d 286, 288 (Ill. 1965) (listing as the first two "[e]ssential elements of the action for malicious prosecution" as "the commencement or continuance of an original criminal or civil judicial proceeding" and "its legal causation by the present defendant against plaintiff who was the defendant in the original proceeding").

14

knowingly made false statements to the police, 'he or she is not liable for 'commencing' a criminal proceeding if the prosecution is based upon separate or independently developed information.'" *Gvozden*, 2016 WL 930514, at *4 (quoting *Szczesniak*, 21 N.E.3d at 491).

The absence of probable cause, for these purposes, means the absence of "a state of facts" which, if known, "would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion that the person arrested is guilty." *Freides v. Sani–Mode Mfg. Co.* 211 N.E.2d 286, 288–89 (Ill. 1965) (internal citation and quotation marks omitted).

With respect to the element of malice, the Court must evaluate "'the state of mind of the person commencing the prosecution that is at issue—not the actual facts of the case or the guilt or innocence of the accused.'" *Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013) (quoting *Sang Ken Kim v. City of Chicago*, 858 N.E.2d 569, 574 (Ill. App. Ct. 2006)). One way for a plaintiff to demonstrate malice is to show "that the [defendant] proceeded with the prosecution for the purpose of injuring plaintiff or for some other improper motive." *Aguirre v. City of Chicago*, 887 N.E.2d 656, 663 (Ill. App. Ct. 2008) (internal citation omitted). Where a trier of fact has found a lack of probable cause, that trier "may infer malice . . . if there is no credible evidence which refutes that inference." *Fabiano v. City of Palos Hills*, 784 N.E.2d 258, 270 (Ill. App. Ct. 2002) (internal citation omitted).

Defendant Hill's argument for summary judgment on the malicious prosecution claim follows his argument for summary judgment on the false arrest claim: he argues that he had probable cause to believe that Jones-Huff had committed the crimes of battery and aggravated assault. But, as discussed above, the parties dispute whether Defendant Hill actually believed that Jones-Huff had battered him and his wife, and whether Jones-Huff was close enough to Huff's shotgun to put Defendant Hill in reasonable fear of her firing it. Defendant Hill's argument that

15

the Court should credit his and not Jones-Huff's version of the facts is an argument for the jury. As Defendant Hill has presented no persuasive legal argument for granting summary judgment on the malicious prosecution claim, the Court denies Defendant Hill's motion for summary judgment on that claim as well.

## CONCLUSION

For the foregoing reasons, Defendant Hill's motion for summary judgment (Dkt. No. 66) is denied.

Dated: September 21, 2016

_____
Andrea R. Wood
United States District Judge